COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss                                       SUPERIOR COURT
                                                    CIVIL ACTION NO.:

| | |
|---|---|
| JESSICA SWYMER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) **COMPLAINT AND** |
| ESTES EXPRESS LINES and, | ) **JURY DEMAND** |
| FREDERICK POTTER | ) |
| | ) |
| Defendants | ) |
| | ) |

## PARTIES

1. The plaintiff, Ms. Jessica Swymer, is an individual residing at 7 Vining Court, Woburn, Middlesex County, Massachusetts 01801.

2. The defendant, Estes Express Lines, Inc. is a Virginia corporation engaged in the business of domestic and international shipping with a place of business located at 2 Dunham Road, Billerica, Middlesex County, Massachusetts 01821.[1]

3. The defendant, Frederick Potter, is an individual residing at 111 Locust Street, Apartment #33A2, Woburn, Middlesex County, Massachusetts 01801.

## FACTS COMMON TO ALL COUNTS

4. Estes Express Lines, Inc. (hereafter "Estes") specializes in domestic, international, and offshore shipping and employs more than 13,000 employees.

---

[1] Estes corporate office: 3901 West Broad Street, Richmond, VA 23230

5. Between 2005 and 2007, Ms. Swymer was employed with Estes as a part-time customer service clerk. In 2007, she was terminated due to reduction in work force. At approximately the same time, her former supervisor, Jeff Smith ("Mr. Smith") was terminated for having sexual relations with a co-worker.

6. Ms. Swymer was re-hired by Estes in June 2008 in the same capacity as her previous employment at Estes' Billerica Terminal located at 2 Dunham Road in Billerica Massachusetts.

7. At that time, Ms. Swymer was hired by the Estes' Billerica Terminal Manager, Fred Potter ("Mr. Potter"). Ms. Swymer reported directly to Mr. Potter. At all material and relevant times, Mr. Potter was the highest ranking manager at the Billerica terminal and had actual and direct authority over all phases of Ms. Swymer's employment, including the type of work she was to perform, the number of hours she was assigned, whether she received any raise in compensation, whether she was to be promoted, whether she was to be cited for any workplace infraction, and ultimately whether she was to remain employed with Estes.

8. Mr. Potter was aware of the workplace sexual relations scandal involving Ms. Swymer's previous supervisor, Mr. Smith, and Mr. Smith's subsequent 2007 termination. Mr. Potter assured Ms. Swymer that the office atmosphere would improve under his management.

9. At all times relevant hereto, Ms. Swymer adequately performed her job duties and responsibilities while employed by Estes.

10. Shortly after Ms. Swymer was re-hired, Mr. Potter began to make inappropriate sexual comments to her. Mr. Potter told Ms. Swymer she was hired because of her legs, and

regularly told Ms. Swymer she was "hot," would call her "Blondie," and would also say things like: "Wow, what I'd do to you if I was 20 years younger."

11. Ms. Swymer made no complaint about Mr. Potter's conduct because she hoped her working conditions would improve, but instead they worsened. After several months, Mr. Potter's comments escalated in nature and he began to repeatedly tell Ms. Swymer that, "I want to have sex with you." On several occasions, Mr. Potter told Ms. Swymer that he would like to take her to a trailer out back and "have his way," with her. On another occasion, Mr. Potter requested that Ms. Swymer go with him to his house in Rhode Island for a weekend when his wife would not be there so that they could have sex.

12. Mr. Potter's inappropriate behavior was continuous and not limited to inappropriate verbal sexual harassment. On more than one occasion, he would come up behind Ms. Swymer while she was sitting at her desk and engage in a humping motion behind her chair. He also moved the location of Ms. Swymer's desk and later admitted that he did this so that he would have a "clear view" of Ms. Swymer from where he sat in the office.

13. Ms. Swymer was embarrassed, distressed, and humiliated by Mr. Potter's harassment. She felt powerless to report his behavior, particularly because he was her direct supervisor, the highest-ranking manager at the Estes Billerica terminal, and much of his conduct toward Ms. Swymer was observed her co-workers with no consequences to Mr. Potter. Further, Mr. Potter bragged to Ms. Swymer on several occasions that he had been the subject of at least three (3) or four (4) investigations by Estes and had been exonerated each time.

14. Ms. Swymer was a single mother of two young children, was in severe financial distress and depended heavily on her employment at Estes to provide for her family. She did not want to lose her job and be unable to support her children.

15. Throughout her employment with Estes, Ms. Swymer repeatedly told Mr. Potter that she desired full-time employment with Estes. Mr. Potter promised that he would give Ms. Swymer a full-time position at Estes. Based upon this promise, Ms. Swymer believed that her working conditions would improve in that she believed she would obtain a full-time position, and that she might work for a manager other than Mr. Potter. Thus, Ms. Swymer refrained from making a complaint.

16. However, Mr. Potter used Ms. Swymer's desire for a full-time position as a mechanism to extort her to have sex with him. On one occasion, in or about the Summer of 2011, when Ms. Swymer discussed the issue with Mr. Potter, he rhetorically asked, "What would it take for you to get full-time employment?" and he playfully clapped his hands and smiled smugly.

17. Ms. Swymer never agreed to have sex with Mr. Potter, and Mr. Potter never promoted Ms. Swymer to a full-time position.

18. Moreover, throughout Ms. Swymer's employment with Estes, Mr. Potter hired three (3) new employees, had Ms. Swymer train them, and then offered two (2) of them full-time positions. The only reason he did not offer the third woman a full-time position was because she quit.

19. Ms. Swymer was passed over for a full-time position because she repeatedly spurned Mr. Potter's sexual advances.

20. In August of 2011, after Mr. Potter's continuing pattern of sexual harassment increased in frequency and severity, Ms. Swymer had an emotional breakdown and she ultimately reported Mr. Potter's sexual harassment to the Estes Human Resources Department ("HR").

21. Approximately three weeks after Ms. Swymer reported Mr. Potter's inappropriate behavior to HR, the investigation into his actions concluded and Mr. Potter was terminated from his position with Estes on September 9, 2011.

22. While Ms. Swymer's working conditions improved following Mr. Potter's termination, Ms. Swymer still suffered from stress and anxiety at work. Ms. Swymer's new supervisors, who had been hired following Mr. Potter's termination, began monitoring her actions very closely. She was cited for taking a smoking break, and for other minor infractions such as being two (2) or three (3) minutes late, something that never occurred previously during her employment with Estes.

23. It also became apparent to Ms. Swymer that her two new supervisors were "warned" about her, although she was under the impression her report against Mr. Potter was confidential. On one occasion, one of the newly hired managers told Ms. Swymer that anytime she needed to speak with him, he would have someone else present in the room.

24. Throughout the course of her employment with Estes, Ms. Swymer remained a part-time employee and was not offered a full-time position by the new managers.

25. On January 24, 2012, Ms. Swymer filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") against Estes alleging that she had been the victim of unlawful sexual harassment and retaliation.

26. After Ms. Swymer filed the MCAD complaint, Estes managers began monitoring her actions even more closely, seemingly building a case for her termination. For example, on Friday, January 27, 2012 (3 days after the MCAD complaint was filed), Ms. Swymer's terminal manager, David Griffin ("Mr. Griffin"), called her into his office to give her a written warning for clocking in at 9:01 a.m. the day before (for a 9:00 a.m. start time). On this occasion, Mr. Griffin had a witness in the room, a practice which had never been employed before.

27. While Ms. Swymer had been spoken to regarding her late arrivals to work before she filed a complaint with the MCAD, those discussions never resulted in anything more than a light reprimand and a direction to be on time in the future, especially because it was known to her managers that she was a single mother and sometimes her childcare arrangements would fall through.

28. On February 23, 2012, less than one month after the MCAD complaint was filed, Ms. Swymer was terminated from her employment with Estes due to her violation of the attendance policy.

29. On May 15, 2012, following her February 23 termination, Ms. Swymer filed a second complaint with the MCAD against Estes alleging that she was the victim of Retaliation.

30. After investigation, the MCAD, on or about January 7, 2013 found 'probable cause' that Estes had discriminated against her and retaliated against her.

31. As is her right, Ms. Swymer elected to prosecute her claims in court rather than continue them at the MCAD. On June 6, 2013, pursuant to M.G.L. c. 151, § 9, the MCAD granted Ms. Swymer's request to pursue the present action in this Court. See attached Exhibit A.

32. As a result of the conduct of Mr. Potter and Estes, Ms. Swymer was damaged and suffered the loss of back pay wages, future lost wages, and emotional and physical pain and suffering.

**COUNT I (Sexual Harassment and Creation of Hostile Work Environment)**

33. By the conduct alleged above, Estes and Potter violated Title VII and G.L. c. 151B, including 42 U.S.C. §§200e-2(c)(1) and G.L. c. 151B, § 4(2), which makes it illegal for employers like Estes and managers like Potter to engage in discrimination, including harassment based on gender/sex.

34. As alleged above, Ms. Swymer was subjected to unwelcome sexual harassment, including sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature.

35. As alleged above, the harassment was sufficiently severe and pervasive to cause the environment to become hostile, intimidating, and humiliating so as to interfere with her employment.

36. As alleged above, the harassment was both objectively and subjectively offensive so that a reasonable person in Ms. Swymer's position would find it hostile and abusive, and Ms. Swymer, herself, found it hostile and abusive.

37. Estes is liable for its own actions and the actions of its agents, including the harassment and creation of a hostile work environment by its manager Frederick Potter.

38. Estes had an affirmative duty to take corrective steps and insure compliance with federal, state, and local anti-discrimination laws, but failed to timely take any such action.

39. As a result, Ms. Swymer was damaged as alleged above.

## COUNT II (Gender Discrimination)

40. By the conduct alleged above, Estes and Potter violated Title VII and G.L. c. 151B, including 42 U.S.C. §§200e-2(c)(1) and G.L. c. 151B, § 4(2), which makes it illegal for employers like Estes and managers like Potter to engage in discrimination, including discrimination based on gender/sex.

41. As alleged above, Ms. Swymer was a woman who adequately performed her job duties, but was repeatedly passed over for promotion to full-time employment and suffered other adverse consequences to the terms and conditions of her employment, including being subjected to intolerable sexual harassment by Estes and its manager, Mr. Potter by reason of her gender. Instead, Estes and its managers, including Mr. Potter and other managers, filled the positions Ms. Swymer sought with other similar or less qualified individuals.

42. The basis of Estes' and its managers' adverse actions against Ms. Swymer was gender discrimination.

43. As a result of the actions and inactions of Estes and its manager, Mr. Potter, Ms. Swymer was damaged.

## COUNT III (Retaliation in violation of Massachusetts and Federal Law)

44. By the conduct alleged above, Estes violated the anti-retaliation provisions of Title VII and G.L. c.151B, including 42 U.S.C. § 2000e-3 and G.L. c. 151B, §4(4), because it subjected Ms. Swymer to intense scrutiny and then terminated her employment as a result of engagement in protected activity: complaining about sexual harassment at Estes, and then filing a complaint with the MCAD about the sexual harassment.

45. Additionally, Estes violated G.L. c. 149, § 185, which makes unlawful for any employer to take any retaliatory action against an employee because the employee discloses to a

8

superior an activity, policy, or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment.

46. As alleged above, following Ms. Swymer's complaint about Mr. Potter's sexual harassment, Estes began to monitor Ms. Swymer's actions carefully and treat her differently.

47. On January 24, 2012, Ms. Swymer filed a complaint with the MCAD against Estes alleging that she had been a victim of sexual harassment and unlawful retaliation.

48. In the days following Ms. Swymer's complaint filed with the MCAD, Estes began to monitor Ms. Swymer's actions with even more scrutiny. She was cited for minor infractions such as taking a smoking break and being one (1) minute late for work. She had previously only been slightly reprimanded for such infractions.

49. On February 23, 2012, less than one month after her complaint was filed with the MCAD, Estes terminated Ms. Swymer from her employment.

50. As a result of the conduct of Mr. Potter and Estes, Ms. Swymer was damaged and suffered the loss of back pay wages, future lost wages, and emotional distress.

## RELIEF REQUESTED

**WHEREFORE,** Ms. Swymer respectfully requests relief as follows:

1. That judgment enter in favor of Ms. Swymer and that she recover all compensatory and punitive damages incurred as a result of the sexual harassment, gender discrimination, and retaliatory conduct against all defendants; and

2. Judgment entered in favor of Ms. Swymer and against all defendants, awarding compensatory damages, punitive damages, attorneys' fees, and cost of litigation plus interest.

3. That the Court award Ms. Swymer such other and further relief as it deems appropriate and just under the circumstances.

**The Plaintiff Requests a Trial by Jury**

Respectfully submitted,
JESSICA SWYMER
By her attorneys,

J. Mark Dickison (BBO # 629170)
mdickison@lawson-weitzen.com
Christopher R. Lemmons (BBO # 685547)
clemmons@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
(617) 439-4990